**Episcopal Retirement Homes**
**v.**
**Dept. of Indus. Rel.**
*[Cite as 2 AOA 23]*

*Case No. C-880774*
*Hamilton County, (1st)*
*Decided April 11, 1990*

*R.C. 140.05.1*
*R.C. 4115.03*
*R.C. 4115.03.2*
*R.C. 4115.10*

Aronoff, Rosen & Stockdale, Irving H. Rosen, Esq., and Gregory Mohar, Esq., 1600 Star Bank Center, 425 Walnut Street, Cincinnati, Ohio 45202, for Plaintiff-Appellee,

Anthony J. Celebrezze, Jr., Attorney General, and James G. Neary, Esq., State Office Tower, Tenth Floor, 30 East Broad Street, Columbus, Ohio 43266, for Defendants-Appellants Ohio Department of Industrial Relations and James W. Harris, Director, Ohio Department of Industrial Relations,

Baker, Baker & Sweterlitsch, Martha J. Sweterlitsch, Esq., and Douglas A. Baker, Esq., 50 West Broad Street, Suite 1326, Columbus, Ohio 43215, for Amicus Curiae Association of Ohio Philanthropic Homes and Housing for the Aging,

Bricker & Eckler and Elisabeth A. Squeglia, Esq., 100 South Third Street, Columbus, Ohio 43215, for Amicus Curiae Ohio Hospital Association.

*Per Curiam.*

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Court of Common Pleas of Hamilton County, Ohio, the transcript of the proceedings, the assignments of error, and the briefs and arguments of counsel.

Defendants-appellants Ohio Department of Industrial Relations and James W. Harris (appellants hereinafter collectively referred to as "ODIR") appeal from the order of the trial court denying their motion for summary judgment and granting the motion for summary judgment filed by plaintiff-appellee Episcopal Retirement Homes, Inc. ("ERH"). For the reasons which follow, the judgment of the trial court is affirmed.

ERH is a nonprofit religious corporation organized under R.C. Chapter 1702, with its principal place of business in Hamilton County, Ohio. It was founded in 1953 with its stated purpose being to provide a broad range of facilities and services for older adults, including both nursing and full-service retirement communities.

In 1987, ERH decided that its St. Luke and Whetstone facilities needed major renovation and elected to finance the projects through the issuance of R.C. Chapter 140 hospital revenue bonds. The bond-financing transaction was quite detailed and involved several entities.

Initially, ERH leased all but one of its facilities to Hamilton County for a period of twenty years. Hamilton County immediately subleased the same facilities back to ERH pursuant to a sublease of the same date and for the identical term of twenty years. The lease provided for the payment of rent by the county to ERH in an amount equal to the net proceeds of the issuance and sale of the bonds. It is undisputed that the rent for the entire term was paid by the underwriter (Seasongood & Mayer) in a lump sum directly to the trustee (Central Trust Company) for the bondholders.

ERH was, in turn, obligated to pay rent to the county under the sublease in an amount sufficient for the payment in full of the debt service on the bonds. However, pursuant to the trust indenture, the county assigned its right to collect rental payments under the sublease to the trustee.

ERH also executed a guaranty agreement, pursuant to which it unconditionally guaranteed payment (to the trustee) of the principal, interest and redemption premium on the bonds. Further, ERH obtained an irrevocable letter of credit (from Barclays Bank PLC) in favor of the trustee. ERH then granted a first mortgage on, and a security interest in, the leased premises to the trustee, in order to secure payments due under the sublease and guaranty, and to Barclays, in order to secure its obligations under the letter-of-credit agreement.

The bond-financing transaction was closed on March 29, 1988, when the underwriter transferred the $20,761,000 aggregate purchase price directly to the trustee. However, prior to this date, James Harris, the director of the Ohio Department of Industrial Relations, sent a letter to ERH asserting the department's position that Ohio's prevailing-wage law would apply to the St. Luke and Whetstone projects.

ERH subsequently filed a complaint for injunctive and declaratory relief, seeking a determination that Ohio's prevailing-wage law did not apply to the construction and renovation of its health-care facilities. ERH separately moved for a temporary restraining order and for

a preliminary injunction, both of which were apparently granted by the trial court in an order dated May 6, 1988.

After various hearings on the matter and after stipulations of fact were filed, the parties filed cross-motions for summary judgment. Following oral argument, the trial court granted ERH's motion, denied ODIR's motion and permanently enjoined the defendants from enforcing or attempting to enforce the provisions of Ohio's prevailing-wage law with regard to those ERH construction and renovation projects funded with R.C. Chapter 140 revenue bonds. ODIR now appeals and advances six assignments of error. We address the fourth and fifth assignments initially since the issues raised in them are crucial to the disposition of the remaining assignments.

In the fourth assignment of error, ODIR alleges the trial court erred in declaring that ERH's construction and renovation projects are not "public improvements" as that term is defined in R.C. 4115.03(C). This assignment is overruled.

A basic guideline for the applicability of Ohio's prevailing-wage law can be found in R.C. 4115.10, which states in pertinent part:

"(A) No person, firm, corporation, or public authority that constructs a *public improvement* with its own forces the total overall project cost of which is fairly estimated to be more than four thousand dollars shall violate the wage provisions of sections 4115.03 to 4115.16 of the Revised Code, or suffer, permit, or require any employee to work for less than the rate of wages so fixed, or violate the provisions of sections 4115.07 of the Revised Code." [Emphasis added.]

In addressing ODIR's fourth assignment of error, we must determine the scope and nature of a "public improvement." Such an undertaking should logically involve a review of R.C. 4115.03(C), which sets forth a definition of "public improvement" in these terms:

"Public improvement" includes all buildings, roads, streets, alleys, sewers, ditches, sewage disposal plants, water works, and all other structures or works constructed by a public authority of the state or any political subdivision thereof or by any person who, *pursuant to a contract with a public authority*, constructs any structure *for a public authority* of the state or political subdivision thereof." [Emphasis added.]

From a review of the parties' arguments concerning this issue, it is apparent that the main area of dispute lies in the interpretation of various words and phrases set forth in R.C. 4115.03(C). ODIR asserts that the construction and renovation of the St. Luke and Whetstone facilities is a "public improvement" because the construction is to be implemented "pursuant to a contract with a public authority," *i.e.,* Hamilton County, and is undertaken "for the public authority." After reviewing the record and considering the circumstances of the instant case, we are not persuaded that ERH's construction and renovation projects fall within the statutory definition of "public improvement."

We base our decision on several factors. First, we are not convinced that the construction and renovation projects will be undertaken "pursuant to a contract" with the county. We find no contract in the record which sets forth the terms or requirements regarding the aforementioned projects. We are mindful that there is some mention of renovation and construction in the lease and sublease, but we do not believe that a contractual agreement, as contemplated by R.C. 4115.03(C), exists between ERH and Hamilton County.

Second, we find ODIR's proposed definition of the phrase "for the public authority" as found in R.C. 4115.03(C) to be overbroad. ODIR argues that the word "for" should be construed to mean "in the interest of." Thus, it contends, the construction of the facilities are "in the interest of" the county because the project will raise the standard of health care for the aged.

Unquestionably, it is in the interest of the county to have improved health-care facilities at the disposal of its aged residents. However, the definition offered by ODIR would, in our judgment, bring an inappropriately broad range of projects within the auspices of R.C. 4115.03(C). We do not view ERH's construction plans as being "for" the county, but as simply an attempt to upgrade and improve two facilities.

We also view R.C. 4115.032 as significant to our inquiry. It states in pertinent part that:

"Construction on any project, facility, or project facility to which sections 122.452 [122.45.2], 122.80, 165.031 [165.03.1], 166.02, 1551.13, 1728.07, or [and] 3706.042 [3706.04.2] of the Revised Code apply is hereby deemed to be construction of a public improvement within section 4115.03 of the Revised Code."

Clearly, no reference is made in this provision to R.C. Chapter 140. Thus, it may properly be said, as ERH has argued in its brief, that the legislature purposefully intended to exclude projects financed with R.C. Chapter 140 revenue

bonds from its definition of "public improvements" and from the purview of the prevailing-wage law.

For all the aforementioned reasons, we overrule ODIR's fourth assignment of error.

In the fifth assignment of error, ODIR alleges the trial court erred in declaring that the construction and renovation projects funded with R.C. Chapter 140 revenue bonds are otherwise exempt from the requirements or restrictions of Ohio's prevailing-wage law pursuant to R.C. 140.051. This assignment is overruled.

R.C. 140.051 states:

"If the costs of the hospital facilities are to be paid with funds derived from revenue obligations issued pursuant to section 140.06 of the Revised Code and with other funds derived from the nonprofit hospital agency, a public hospital agency, pursuant to negotiation and in the manner determined in its sole discretion by the governing body of the public hospital agency, may enter into a contract for the acquisition, construction, improvement, equipment, or furnishing of a hospital facility that is to be leased pursuant to section 140.05 of the Revised Code by a public hospital agency to a nonprofit hospital agency. *Any requirement of competitive bidding, other restriction, or other procedures that are imposed on a public hospital agency with respect to contracts is not applicable to any contract entered into pursuant to this section.* A hospital facility is not exempt from applicable zoning, planning, and building regulations by reason of being financed from the proceeds of obligations issued pursuant to this chapter." [Emphasis added.]

In construing this statute, ERH argues that the prevailing-wage law is a "restriction" on its agency and that R.C. 140.051 therefore provides that R.C.-Chapter-140-financed projects shall not be subject to the prevailing-wage statute. ODIR, on the other hand, in disputing this claim, asserts that the prevailing-wage law is not a restriction, but rather a requirement which must be complied with when a construction project, such as the one at issue here, is undertaken.

After considering the facts of this case and the purpose of R.C. 140.051, we conclude that R.C. Chapter 140.051 effectively exempts the ERH projects from the mandates of Ohio's prevailing-wage law. In rendering our decision, we agree with the court's conclusion in *Lancaster-Fairfield Community Hospital vs. Ohio Department of Industrial Relations* (Dec. 9, 1986), Fairfield App. No. 19-CA-86, unreported, that the prevailing-wage statute is a "restriction" within the contemplation of R.C. 140.051. This provision buttresses our holding that the legislature did not intend for the prevailing-wage law to apply to construction projects financed with the proceeds of hospital revenue bonds. ODIR's fifth assignment of error is overruled.

ODIR's first, second, third and sixth assignments of error are now grouped for discussion since it is apparent that their resolution is dependent upon the responses given to the fourth and fifth assigned errors above.

Based on our disposition of the earlier assignments, we conclude that the trial court did not err when it declared that Ohio's prevailing-wage law was inapplicable to ERH's construction projects financed with R.C. Chapter 140 bonds. We further hold that the trial court did not err when it granted ERH's motion for summary judgment, when it overruled ODIR's motion for summary judgment and when it permanently enjoined ODIR from enforcing or attempting to enforce the provisions of Ohio's prevailing-wage law with respect to the projects funded with R.C. Chapter 140 revenue bonds.

*Judgment affirmed.*

KLUSMEIER, P.J., HILDEBRANDT and UTZ, JJ.